(No. 14131.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HUGH E. PADDOCK, Plaintiff in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*definition of embezzlement—distinguished from larceny.* Embezzlement is the fraudulent appropriation to one's own use of the money or goods entrusted to his care by another, and it is distinguished from larceny by the fact that in embezzlement the original taking of the property is lawful or with the consent of the owner.

2. SAME—*intent to embezzle must be proved beyond reasonable doubt.* Under section 75 of the Criminal Code the intent to embezzle or fraudulently convert to one's own use, or to secrete with intent to embezzle or fraudulently convert, must be established against the defendant beyond a reasonable doubt before he can be convicted of the crime of embezzlement.

3. SAME—*when a conviction of embezzlement cannot be sustained.* A judgment convicting a defendant of embezzling the proceeds of an auction sale at which he was employed as clerk is not sustained by evidence that he deposited the money in his father's bank in his own name as agent of his employer and that when the bank failed shortly thereafter he was unable to pay back the money, where it is further proved that the employer by his conduct assented to the defendant's acts in so depositing the money, which the books of the bank show was on deposit, and there is no proof that the defendant knew or had reason to believe that the bank was insolvent or that he ever drew any of the money out for his own use, although his employer did draw some, pending settlement, before the bank failed.

4. SAME—*an instruction should not single out facts to establish guilt in disregard of other evidence.* Although an instruction in a prosecution for embezzlement does not direct a verdict, it should not single out and call the jury's attention to facts tending to establish the defendant's guilty intent without making mention of other facts or circumstances proved which have a different bearing as to such intent, particularly where the crime of embezzlement is not defined by any of the instructions and the jury are not informed what essential elements or facts must be proved to establish guilt.

WRIT OF ERROR to the Circuit Court of Whiteside county; the Hon. EMERY C. GRAVES, Judge, presiding.

J. J. LUDENS, and EDWARD G. INCE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT W. BESSE, State's Attorney, and EDWARD C. FITCH, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Hugh E. Paddock, plaintiff in error, (hereinafter referred to as defendant,) was indicted, tried and convicted in the circuit court of Whiteside county for embezzling $1361 of the money and property of Frank Specht. A motion for a new trial was overruled and defendant was sentenced to the penitentiary. This writ of error has been sued out to review the record.

The indictment charges that the defendant was employed by Frank Specht to clerk his public auction sale on December 14, 1920, and that by virtue of his employment, and as agent aforesaid, he received into his possession the sum of $1361, the same being the property of Specht, and that without the consent of Specht he unlawfully, feloniously and fraudulently converted and appropriated said money, funds and property of Specht to his own use, with intent then and there unlawfully and feloniously to convert the same to his own use and to embezzle the same, etc.

Defendant was, and had been for eighteen years, clerk and cashier of his father's private bank at Prophetstown, in the said county, until it was required, under the law, to close its business on December 30, 1920. The evidence does not disclose whether this bank was solvent or insolvent, but it is intimated, and even stated, in the briefs of the parties that after the bank was closed it was discovered that it was insolvent. Defendant was also in the insurance business and acted as clerk at various auction sales. He owned no interest in the bank. On December 14, 1920, he was employed by Frank Specht, the prosecuting witness, to

clerk for an auction sale held by Specht on his farm near Prophetstown. As clerk defendant kept the sale book and collected the cash, checks or notes that were paid on sales. The cash and checks collected by him amounted to $1800. The money and the proceeds of the checks received were deposited in his father's bank by defendant in his name, as clerk for Specht, the deposit at all times standing in the name of "Hugh E. Paddock, clerk for Frank Specht." The checks that he received at the sale and which were payable to Specht were indorsed by him, "Frank Specht, H. E. Paddock, clerk," before their proceeds were deposited by him. He paid the auctioneers their charges for auctioneering the sale shortly after the sale. He also paid Albert Specht, at the direction of Frank Specht, out of the same fund, the amount of money that was due Albert for certain articles belonging to him that were sold at the same sale. Some of the notes that were taken in the name of Specht were turned in to the bank on the day of the sale and were kept for Specht in an envelope, and they were thus deposited in the bank as a special deposit. Some of the notes were not made out by the parties who owed Specht until several days after the sale, and one for about $140 had not been delivered to defendant at the time the bank closed on December 30, 1920. The fact that these notes were not brought in delayed a settlement between defendant and Specht, and for this reason no settlement was made up to the time the bank closed and was taken over by the trustee in bankruptcy. Specht had been running an account at this same bank and was in need of funds before a final settlement could be made. On his statement to defendant to that effect, he at the direction of defendant drew on the bank for what money he needed. The bank's books showed that Specht thus drew a check for $175.58 on December 16, and that he had drawn a total of $245.58, and his account was overdrawn in that amount when the bank closed. The evidence discloses that defendant owed Specht at the time the bank closed $1361,

but he had not been paid anything by Specht for his services at the sale.

There is a direct conflict as to some of the facts in the record between the testimony of Frank Specht and the defendant. Upon those controverted facts the defendant testified substantially as follows: Specht told him at the close of the sale to take everything he had in the way of money, checks and notes to the bank and pay the bills, meaning the bills of the auctioneers and others (besides Specht) who had claims against these funds. There were still a good many outstanding accounts made at the sale to be collected, and defendant took the money and checks to the bank and deposited them. After the sale he collected other moneys due and deposited them in the bank in his account as aforesaid. The reason he deposited the funds in his name as agent was to enable him to pay bills and draw checks against such funds as clerk or agent. About December 18, 1920, Specht came into the bank and asked him how things were going as to the sale, and he informed him that some of the purchasers were a little slow; that one note had not yet been returned to him and that a few accounts had not been paid. Nothing was said by Specht at that time about a settlement between them. He again saw Specht on December 21, 1920, at Egert's sale, and told him to see the man who had not brought in his note and to hurry him up, and Specht reported later that he saw the man and that he would mail his note to the defendant. About December 28 or 29 Specht again came into the bank and asked defendant if he had received the note, and on being informed that he had not, said that he would like to get things balanced up so that he could pay his rent. Defendant told Specht that just as soon as he got that note and two or three other items they could balance the books easily, and that Specht did not then say anything about a settlement. On January 2, after the bank was closed, Specht and B. J. Egert, the latter of whom appears to be a party for whom defendant had con-

ducted a sale, came in to see defendant about their accounts
with him. He told Specht, in the presence of Egert and
others, that Specht's notes were all right and were there in
an envelope. He never at that time told Specht that his
money was separate from the money in the bank, or that
he and Egert need not worry as he had their money in
his own hands, or anything to that effect. He also testified
positively that he never took or used any of Specht's money
for his own use and was not guilty of embezzling any part
of the same.

Upon the same controverted questions Specht testified:
On the evening of the sale he told defendant to pay Robert
Wayne, one of the auctioneers, out of the money collected
by him, and that nothing was said about the balance of
the money in defendant's hands. He did not ask defend-
ant for the money and knew that he had it. He did not
tell him to take the money and put it in the bank and pay
the different bills. He never gave him authority to pay De-
viney, the other auctioneer, but he deducted the amount de-
fendant paid Deviney, and all other amounts he paid out
of the funds deposited, in their settlement after the bank
closed, and never made any complaint to him about mak-
ing such payments. On the 17th or 18th of December, and
after the sale, he had a conversation with defendant at the
bank and told him that he needed the money and asked for
a settlement. Defendant said to him: "If you need some
money, go ahead and check it; we will settle up later;
there is one note out, and when that comes in we will set-
tle." Specht accordingly drew checks on the bank for what
money he wanted but did not know the amounts that he
drew out. On December 29, the day before the bank closed,
he saw defendant at the bank. He went there for a settle-
ment. Defendant said for him to come in Monday and
he would settle, and that there was still one note out. He
and Barney Egert went to the bank on Sunday, after it
closed. Defendant said to him and Barney: "You fellows

don't need to worry; I have got the money and will settle with you." In another part of his evidence he varies this statement by saying that what defendant said to him and Barney was this: "I have got you fellows' money and will settle with you; you don't need to worry; I have got your money; it is separate from the bank."

Egert was not called as a witness. A sister of defendant testified that she was in the bank on the Sunday after it closed and that she did not hear any statement of defendant to Specht and Egert to the effect that he had their money separate from the other funds of the bank or any words to that effect; that she was practically there all that day but would not say that she heard everything that was said between defendant and Specht and Egert. Defendant also testified that he did give Egert some money in a sack and told him that it was his money.

Defendant was indicted under section 75 of the Criminal Code, which provides: "If any officer, agent, clerk, or servant of any incorporated company; or if a clerk, agent, servant or apprentice of any person * * * embezzles or fraudulently converts to his own use, or takes and secretes with intent so to do, without the consent of his company, employer or master, any property of such company, employer, master, or another, which has come to his possession, or is under his care by virtue of such office or employment, he shall be deemed guilty of larceny." Embezzlement is the fraudulent appropriation to one's own use of money or goods entrusted to his care by another. It is distinguished from larceny by the fact that the original taking of the property was lawful or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. Under the foregoing statute the unlawful and felonious intent to embezzle or fraudulently convert to one's own use, or to secrete with intent to embezzle or fraudulently convert, must be established against defendant beyond a reasonable doubt before he can

be convicted of the crime of embezzlement. The evidence in this case does not satisfactorily show, beyond a reasonable doubt, such unlawful and felonious intent on the part of defendant. While the prosecuting witness undertook to positively deny that he gave permission to or told defendant to deposit the funds in the bank in question and pay therefrom all persons who had claims against the same, it was actually admitted by him that he told defendant to pay one of the auctioneers. He never at any time complained of the action of defendant in depositing the funds in said bank, and the evidence does not show any refusal by defendant at any time to pay the money to Specht, or what he wanted of it, previous to the time the bank was forced to close its business. Up to that time there was really no settlement demanded by Specht and refused or not granted by defendant except when such refusal was impliedly consented to by Specht. Specht drew out of the bank while it was open what money he wanted, with the consent and at the direction of defendant, and the evidence does not establish any refusal or failure of defendant to pay him money or to let him draw it out of the bank by check previous to the time the bank closed, even though Specht had no balance in his favor in the bank on or after December 14, 1920.

The mere fact that defendant had deposited the funds in his own name as agent and not in the name of Specht, and had not paid the same all out to Specht or for him up to the time the bank closed, is not sufficient to convict defendant of embezzlement. He positively testified that he had no money or property to settle with after the bank had closed and that he was unable to get any of the money out of the bank. The only evidence that tends to show the fraudulent conversion of the funds on the part of defendant is the testimony of Specht that defendant told him and Egert on Sunday after the bank closed, in substance, that he had their money in his possession separate and apart

from the funds of the bank, and that they need not worry and that they would get their money. This testimony is just as positively denied by defendant. The books of the bank, according to the record evidence, show that money was on deposit to the amount of $1361, and that if defendant did state to Specht and Egert, in substance, that the funds were not in the bank but in his private possession the bank's books show this statement to be untrue. In other words, the bank's books corroborate the defendant's testimony. There is no proof in the record that the bank was insolvent or that the defendant knew or had reason to believe that it was, and that he placed the funds therein knowing or believing that Specht would lose any or all of it, if so deposited, by reason of the insolvency of the bank, or that he ever drew one cent of it out of the bank for his own private use,—not even to pay himself as clerk of the sale. Under this condition of the proof we have a reasonable doubt, from the evidence, of the guilt of defendant and are therefore not content to affirm this judgment.

There were some slight errors on the part of the court in the giving and refusing to give certain instructions to the jury. By instruction No. 8 for the People the jury were told that if they believed from the evidence, beyond a reasonable doubt, that defendant was the agent of Frank Specht, and that as such agent he received into his possession money which belonged to Specht, and that as said agent he failed to account to Specht for the money or to pay over the same to him, then they might take such facts into consideration, in connection with other evidence, in determining whether or not defendant was guilty of the crime charged. The instruction literally states true propositions of law, but the error in giving it arises from the fact that it gathers a line of facts proved and presents them to the jury as proper to be considered in determining defendant's intent, making no mention of other facts or circumstances pointing in a different direction as to such intent. (*Coon*

v. *People,* 99 Ill. 368.) All of the facts mentioned in this instruction were admitted by defendant, and those facts, alone, were not at all sufficient to establish his guilty intent, which was necessary to his conviction. The instruction does not direct a verdict, but it gives too much importance to the facts enumerated over the other essential facts to establish defendant's guilty intent, by singling them out and calling the attention of the jury to them. Embezzlement is not defined by any of the instructions, and the jury were not told by any instruction for the People what essential elements or facts must be proved to establish defendant's guilt.

Circumstantial evidence was defined by the court, and the jury were told that it was legal and competent evidence to be considered in this case, and that if the facts and circumstances involved in the case are sufficient to satisfy them, beyond a reasonable doubt, that defendant is guilty, then such facts and circumstances are sufficient to authorize a verdict of guilty. The facts in the case, or the controverted facts upon which defendant's guilt mainly depended, were centered upon the proposition whether he had the money of Specht in his possession and refused to pay it over on demand, or whether it was deposited in the bank by defendant and by reason of the bank's closing he was unable to pay it out to Specht. The whole testimony bearing on these propositions was as above disclosed, and there were no circumstances proved, other than as above shown, tending to prove or disprove either of said propositions. We would hesitate to reverse any case for the giving of said instruction, which absolutely and correctly states the law, but in this case we do not think the instruction ought to have been given, as it would be likely to prejudice rather than to aid the jury in reaching a right verdict. In cases where the evidence is so evenly balanced upon any material fact, and particularly in criminal cases, the instructions ought to be very accurate and not open to just criticism, otherwise they might mislead the jury.

We do not think that the court made any erroneous ruling on the introduction of evidence, or in refusing to allow defendant to prove that Specht had filed his claim against the bank in the bankruptcy court for the same funds or money the defendant is alleged to have embezzled. Such evidence had no tendency to contradict the testimony of Specht upon any material point or fact in the case. It was his right to file his claim against the bank and get his money, or what part of it he could, in that manner, as it is absolutely proved that the bank had his money, which was deposited there by his agent for him and for his use.

For the reasons aforesaid the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*